UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| MARGARITA R. KARPOV, Individually and as Administratrix of the Estate of Dimitry B. Karpov, and MICHAEL DYLAN KARPOV, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CAUSE NO.: 1:06-CV-195-TLS |
| NET TRUCKING, INC., et al. | ) ) | |
| Defendants. | ) | |

## OPINION AND ORDER

This matter is before the Court on the issue of damages. On July 14, 2010, the Court received evidence at an evidentiary hearing [ECF No. 159], and on July 30, 2010, the Plaintiffs submitted a Post Hearing Brief [ECF No. 160], to which are attached evidentiary materials and video recordings of depositions [ECF No. 161].

## BACKGROUND

This diversity action, which the Plaintiffs filed in November 2005, is a lawsuit pertaining to the 2005 death of Dimitry B. Karpov in a vehicle collision near Bristol, Indiana, on Interstate 80/90, a stretch of the Indiana Toll Road. In their Second Amended Complaint, the Plaintiffs made the following claims: negligent operation of a tractor trailer/wrongful death; wrongful operation of a trucking company; survivorship/pain and suffering; personal injury; familial loss of consortium; and fraudulent conveyance. This case has an extensive procedural history, which the Court has discussed in its previous Opinions and Orders [ECF Nos. 92, 117, & 148] and need not repeat here. The Court, in its February 11, 2010, Order [ECF No. 148], granted the Plaintiffs'

Motion for Sanctions and directed the Clerk to enter judgment for the Plaintiffs and against Defendant Net Trucking, which the Clerk entered [ECF No. 149] on the same day. The only issue remaining is the amount of damages due the Plaintiffs.

**DEFAULT JUDGMENT DAMAGES STANDARD**

Federal Rule of Procedure 55, which governs the entry of default and the entry of default judgment, creates a two-step process: "the establishment of the default, and the actual entry of a default judgment. Once the default is established, and thus liability, the plaintiff still must establish his entitlement to the relief he seeks." *In re Catt*, 368 F.3d 789, 793 (7th Cir. 2004); *see also Lowe v. McGraw-Hill Cos., Inc.*, 361 F.3d 335, 339 (7th Cir. 2004) (stating that there is a clear distinction "between the entry of default and the entry of a default judgment"). The first step is satisfied when the clerk enters a party's default because it has "failed to plead or otherwise defend" and this "failure is shown by affidavit or otherwise." Fed.R.Civ.P. 55(a). "Upon default, the well-pleaded allegations of the complaint relating to liability are taken as true." *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983). The second step—the entry of default judgment that is anticipated by subsection (b) of the Rule—may only be entered against "a defendant who has been defaulted." Fed. R. Civ. P. 55(b). A court may also enter default judgment against a party pursuant to Rule 37 for failing to comply with a court order. Fed. R. Civ. P. 37(b)(2)(A) ("If a party . . . fails to obey an order to provide or permit discovery . . . the court where the action is pending may issue further just orders. They may include . . . rendering a default judgment against the disobedient party.").

Rule 55(b) contemplates that, after default is entered, a party must apply to the court for a

default judgment when the plaintiff's claim is not for a sum certain or a sum that can be made certain by computation, and the court may then render default judgment. The Seventh Circuit has made the following observation regarding the determination of the amount of damages after a party has defaulted in defending against a lawsuit:

> Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true. The district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty.

*In re Catt*, 368 F.3d at 793 (citation marks omitted). Under Rule 55(b)(2), the court has the discretion to conduct hearings "when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter."

## ANALYSIS

This Court must determine what damages are appropriate in this case. As to the wrongful death, wrongful operation, survivorship, Margarita Karpov's personal injury, and consortium claims, the issues include: compensatory damages (including economic and non-economic damages), and punitive damages.[1] As to the fraudulent conveyance claim, the Court has to determine what remedies are appropriate.

---

[1] The Court places the following claims under the category of "Dmitry Karpov's Wrongful Death": wrongful death; wrongful operation; survivorship; and consortium.

A.      **Compensatory Damages for Dmitry Karpov's Wrongful Death**

The Indiana Wrongful Death Act creates a statutory cause of action to recover damages caused by the wrongful act or omission by another resulting in death. Ind. Code § 34-23-1-1. Dmitry Karpov, who was twenty-seven years old at the time of his death, is survived by his wife, Margarita, and their son, Michael. Michael was fourteen months old at the time of Dmitry's death. Per-Se Technologies employed Dmitry as a software programmer, and at the time of his death, it paid him $60,000 per year. Dmitry was at the beginning of his career and would likely have received cost of living and merit raises during his tenure with the company. Dmitry's remaining work life expectancy was thirty-two years, and his remaining life expectancy was fifty years. (U.S. Dep't of Labor, Bureau of Labor Statistics, *Work Life Estimates* (Bulletin 2254, Feb. 1986), ECF No. 160-1; U.S. Dep't of Health & Human Servs., *United States Life Tables, 2004*, 56 National Vital Statistics Reports 9 (Dec. 2007), ECF No. 160-2.) According to Bureau of Labor Statistics calculations, the value of Dmitry's pension, health insurance, and other employment benefits would equal approximately 28.87% of his base salary. (*See* U.S. Dep't of Labor, Bureau of Labor Statistics, *Employer Costs for Employee Compensation—September 2008* (Dec. 2008), ECF No. 160-3.) Therefore, Dmitry's loss of earning capacity as a result of his death is $2,474,304.00—his salary per year times remaining work life, plus his benefits per year times his remaining work life.[2] Under Indiana law, a defendant may provide evidence that an amount should be reduced to adjust for present value or the "projected personal maintenance expenses of the decedent[,]" but the Defendant has ceased defending in this action, and the Plaintiffs do not bear any burden related to such a reduction. *TRW Vehicle Safety Sys., Inc. v.*

---

[2] ($60,000 * 32) + (($60,000 * .2887) * 32) = $2,474,304.00

*Moore*, 936 N.E.2d 201, 220 (Ind. 2010).

In addition, Margarita and Michael suffered non-economic losses as a result of losing their husband and father, respectively. Margarita testified at the evidentiary hearing about the non-economic losses that she and Michael have suffered as a result of Dmitry's death. She spoke about having a relationship with Dmitry since college and the difficulty of raising Michael without him. The Plaintiffs also submitted photos of Dmitry and Michael before Dmitry's death that showed the closeness of their relationship. The Plaintiffs requested $5,000,000.00 in damages for their non-economic losses. An award of non-economic damages is not unreasonable when economic damages make up at least approximately thirty percent of the overall award. *See Hagerman Constr., Inc. v. Copreland*, 697 N.E.2d 948, 963 (Ind. Ct. App. 1998) (discussing Indiana cases and concluding that jury verdicts containing at least approximately thirty percent economic damages were not excessive). The Court's award of $2,474,304.00 in economic damages would make up approximately thirty-three percent of the overall award if the Court were to award the Plaintiffs $5,000,000.00 in non-economic damages. Based upon the evidence before the Court and the governing legal standards, an award of $5,000,000.00 in non-economic damages is not unreasonable in this case. The Plaintiffs have already recovered $752,647 on this wrongful death claim from Net Trucking's insurance company, which the Court will deduct from the sum total of economic and non-economic damages. Consequently, as compensatory damages for Dmitry's wrongful death, the Court will award the Plaintiffs $6,721,657.00.[3]

---

[3] $2,474,304.00 + $5,000,000.00 - $752,647.00 = $6,721,657.00

**B.      Compensatory Damages for Margarita's Personal Injury Claim**

As a result of this accident, Margarita suffered multiple injuries, which are shown in detail in the Plaintiffs' evidentiary submission attached to their Pre-Hearing Brief. (ECF No. 155-3.) The injuries include a closed head injury, bilateral pneumothoraces, left rib fractures, liver laceration with hematoma, pelvic hematoma, left sacral ALA fracture, left sacral iliac joint widening, left superior and inferior rami fractures, right superior and inferior rami factures, pulmonary contusion, acute blood loss, anemia, and left foot drop. (*Id.* at 2.) At Parkview Hospital in Fort Wayne, Indiana, Margarita underwent surgery during which doctors placed an external fixator on and inserted an ileosacral screw in her left sacroiliac joint. (*Id.* at 2–3.) Approximately ten days after the accident, she was transferred to The MetroHealth Medical Center in Cleveland, Ohio, where she underwent an additional surgery that included an open reduction, an internal fixation of the left sacroiliac joint, and an adjustment of the external fixation with a new pin placement. (*Id.* at 6–8.) For months, she was unable to bear her own weight on her legs. For six months, she underwent physical therapy. For much of that time, she was unable to lift her child, Michael, or to take care of his daily needs. Today, nearly five years after the accident, Margarita continues to have pain in her leg and residual weakness in her left foot. She is at risk for degenerative joint disease in her hip joint as well as in her lumbosacral spine. For the medical care she received, she incurred costs totaling $151,597.20 in medical bills.

The Plaintiffs request $500,000 in damages for Margarita's acute injuries and $500,000 in damages for the past disability that she suffered. Margarita's remaining life expectancy is fifty-two years. (U.S. Dep't of Health & Human Servs., *United States Life Tables, 2004*, 56 National Vital Statistics Reports 9 (Dec. 2007), ECF No. 160-4.) The Plaintiffs request $19,200

per year for a total of $998,400.00 for Margarita's future pain and suffering.[4] Under Indiana law, the calculation of pain and suffering is not governed by fixed rules or mathematical precision. *See Dee v. Becker*, 636 N.E.2d 176, 178 (Ind. Ct. App. 1994) (stating that "[d]amages for pain and suffering are of necessity a jury question which may not be reduced to fixed rules and mathematical precision"). Based upon the evidence before the Court and the Plaintiffs' presentation, which stands undisputed by the Defendant, the Court finds the Plaintiffs' request for pain and suffering reasonable. Margarita has already recovered $30,000 from Net Trucking's insurance company. Consequently, the Court will award Plaintiff Margarita Karpov $2,119,997.20 in compensatory damages.[5]

## C. Punitive Damages

In addition to the compensatory damages discussed above, the Plaintiffs also seek punitive damages. Under Indiana law, punitive damages may be appropriate where a plaintiff recovers compensatory damages. *Crabtree ex rel. Kemp v. Estate of Crabtree*, 837 N.E.2d 135, 137–38 (Ind. 2005) ("Successful pursuit of a cause of action for compensatory damages is a prerequisite to an award of punitive damages.") (citing *Erie Ins. Co. v. Hickman*, 622 N.E.2d 515, 523 (Ind. 1993); *Sullivan v. Am. Cas. Co. of Reading, Pa.*, 605 N.E.2d 134, 140 (Ind. 1992)). Indiana law prohibits punitive damage awards based solely on wrongful death actions, Ind. Code § 34-23-1-1, and caps punitive damage awards at three times the amount of compensatory damages, Ind. Code § 34-51-3-4(1). Additionally, "[p]unitive damages are

---

[4] $19,200 * 52 = $998,400.00

[5] $151,597.20 + $500,000 + $500,000 + $998,400 - $30,000 = $2,119,997.20

available only if clear and convincing evidence shows that the defendant 'acted with malice, fraud, gross negligence or oppressiveness which was not the result of a mistake of fact or law, honest error of judgment, overzealousness, mere negligence, or other human failing.'" *Williams v. Tharp*, 914 N.E.2d 756, 769 n.6 (Ind. 2009) (quoting *Bud Wolf Chevrolet, Inc. v. Robertson*, 519 N.E.2d 135, 137 (Ind. 1988)). In Indiana, "[i]t is not a defense to an action for punitive damages that the defendant is subject to criminal prosecution for the act or omission that gave rise to the civil action." Ind. Code § 34-24-3-3.

In this Opinion and Order, the Court is awarding compensatory damages to Margarita for her injuries, which allows an award of punitive damages.[6] The Defendant's conduct was grossly negligent, manifested an indifferent and reckless disregard for the health and safety of others, and caused a significant physical harm. Defendant Gil drove the tractor-trailer while intoxicated. *See Gil v. State*, No. 20A03-0611-CR-525, 2007 WL 1470150, at *9 (Ind. Ct. App. May 22, 2007) (affirming Defendant Gil's criminal sentence including the finding that he acted recklessly and inflicted serious bodily injury on other persons).[7] Defendants Gil and Net Trucking altered the driving log books. Defendant Gil drove more than the allowed number of hours under the Federal Motor Carrier Safety regulations, 49 C.F.R. § 395.8, and Defendant Net Trucking knowingly allowed its drivers to engage in this practice. Considering the Defendant's default and the evidence before the Court, the Court will grant the Plaintiffs' request and award the

---

[6] The punitive damages award here is not based upon the wrongful death claim.

[7] "Unless later designated for publication, a not-for-publication memorandum decision shall not be regarded as precedent and shall not be cited to any court except by the parties to the case to establish res judicata, collateral estoppel, or law of the case." Ind. Rule of Appellate Procedure 65(D).

maximum punitive damages allowed under Indiana law, which is $6,359,991.60.[8] This damages award represents Margarita's compensatory damages award, multiplied by the treble statutory factor for punitive damages. In order to determine if a punitive damages award is constitutionally excessive, the Court must consider the reprehensibility of a defendant's conduct:

> [The Court must determine whether] the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident.

*Catt v. Skeans*, 867 N.E.2d 582, 587 (Ind. Ct. App. 2007) (quoting *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003)). The Court finds, for the reasons stated above, that the harm caused was physical, that the conduct showed a reckless disregard of the health or safety of others, and that the Defendant's conduct of altering log books and having drivers drive more than the permissible number of hours was repeated.

**D.     Fraudulent Conveyance**

The Plaintiffs request that the Court determine that Defendant Net Trucking fraudulently conveyed its assets to certain party Defendants who have also defaulted and have had default judgment entered against them in this matter. "A default judgment establishes, as a matter of law, that defendants are liable to plaintiff on each cause of action alleged in the complaint." *e360 Insight v. The Spamhaus Project*, 500 F.3d 594, 602 (7th Cir. 2007) (citing *United States v. Di Mucci*, 879 F.2d 1488, 1497 (7th Cir. 1989)). Although default judgment establishes liability, a

---

[8] $2,119,997.20 * 3 = $6,359,991.60

court must be careful in crafting remedies, especially those of an equitable nature. *Id*. at 604.

The Plaintiffs' Second Amended Complaint alleges that Defendant Net Trucking fraudulently conveyed its assets to Defendants Agata Swietoslawski, Foxline Transportation, Inc., Blue Line Equipment LLC, Net Freight System, Inc., and Net Trans. Inc. (Fraudulent Conveyance Defendants). On May 16, 2008, the Clerk entered a Clerk's Entry of Default [ECF No. 107] against the Fraudulent Conveyance Defendants pursuant to Federal Rule of Civil Procedure 55(a). The Court issued an Order [ECF No. 117] on July 18, 2008, granting the Plaintiffs' Motion for Default Judgment Against the Fraudulent Conveyance Defendants [ECF No. 108] on Plaintiffs' fraudulent conveyance claim. The Court explained that the Order did not "prejudice the ability of Defendant Net Trucking, Inc., a party not in default, to contest Plaintiffs' allegations of fraudulent conveyance as set forth in Plaintiffs' Second Amended Complaint." (ECF No. 117 at 2.) The evidence before the Court shows that Defendant Net Trucking fraudulently conveyed its assets to these other Defendants. For instance, Marek Swietoslawski, the President of Defendant Net Trucking, testified at his deposition that, after the August 2005 accident, he transferred the title to his house from him and his wife to only his wife, Agata Swietoslawski. According to his deposition, his wife started Net Trans, Inc., a month or two after the accident. Foxline Transportation, Inc. and Blue Line Equipment, LLC are also Agata Swietoslawski's companies formed soon after the accident. Marek Swietoslawski owned Net Freight System Inc., which brokered business for Net Trucking. These companies took a number of customers from Net Trucking, engaged in trailer leasing practices, trailer sales, and otherwise acted as if they were new entities replacing Net Trucking. Considering Defendant Net Trucking's default in this litigation—as a result of this Court's Order pursuant to Federal Rule of

Civil Procedure 37(b)(2)(A)(vi)—the allegations in the Second Amended Complaint, and the uncontested evidence in the record, the Court finds that Net Trucking fraudulently conveyed its assets to these other defaulting Defendants, and the Court will order set aside any conveyance of Defendant Net Trucking's assets to the Fraudulent Conveyance Defendants.

## CONCLUSION

For the foregoing reasons, the Court ORDERS that judgment be entered in favor of the Plaintiffs and against Defendant Net Trucking in the following amounts: $6,721,657.00 as compensatory damages for Dmitry Karpov's wrongful death; $2,119,997.20 as compensatory damages for Margarita's personal injury claim; and $6,359,991.60 in punitive damages. The Court further ORDERS, pursuant to Ind. Code § 32-18-2-17, that any asset conveyances from Defendant Net Trucking, Inc. to Defendants Agata Swietoslawski, Foxline Transportation, Inc., Blue Line Equipment LLC, Net Freight System, Inc., or Net Trans, Inc., be set aside and annulled to the extent necessary to satisfy this judgment.

SO ORDERED on December 6, 2010.

 s/ Theresa L. Springmann  
THERESA L. SPRINGMANN  
UNITED STATES DISTRICT COURT